**James Durwood GRISHAM, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 7985.**

United States Court of Appeals
Tenth Circuit.

April 26, 1965.

Michael Earle Oldham, Denver, Colo.,
for appellant.

Jack R. Parr, Oklahoma City, Okl. (B.
Andrew Potter, U. S. Atty., with him on
brief), for appellee.

Before MURRAH, Chief Judge,
LEWIS, Circuit Judge, and DOYLE, District Judge.

PER CURIAM.

This is an appeal from an order denying petitioner's motion under 28 U.S.C.
§ 2255 to vacate a judgment and sentence
imposed upon a seven-count indictment
charging him with conspiracy and substantive violations of the federal nar-
cotics laws. The primary contentions are
that his sentence and conviction were procured by entrapment and by a coerced
plea of guilty.

Petitioner and his co-defendant were
arrested in Oklahoma City on April 16,
1963, immediately after he had transferred a quantity of marihuana and
heroin to Federal Narcotics Agent John
Enenbach. When they appeared for arraignment, counsel was appointed and
pleas of not guilty entered. Approximately four weeks later, petitioner appeared in open court with his counsel
and asked that his plea be changed to
guilty. The sentence he is now serving
was imposed about a month later.

Over a year after sentencing, petitioner filed this motion alleging entrapment
and coercion. A hearing was granted
limited to the coercion plea, the court being of the opinion that the defense of
entrapment was not cognizable in this
collateral proceeding, and see Ellison v.
United States, 10 Cir., 283 F.2d 489.

At the hearing on this motion, petitioner testified that on two occasions subsequent to his arrest, Agent Enenbach told
him if he did not plead guilty to the
charges "I'm going to get you all the
time I can get you"; and that on their
second meeting the agent also informed
him that similar charges would be
brought against his brother. The first
of these conversations was said to have
taken place on the morning following his
arrest in the conference room at the
County Jail, and the second approximately one week later at the visitor's
window. The second meeting and conversation was corroborated by the testimony of a fellow jail mate who stated he
was standing nearby and overheard what
was said. The petitioner further testified that his counsel advised him that the
government agent could "get you a hundred years on these things * * * if
he so desires and puts enough pressure
in the right places"; that he did not
mention these threats to the Court or his
appointed counsel because he was scared
and on morphine during his confinement
at the County Jail; and that he "pleaded

guilty because he did not want a hundred years" and did not want to implicate his brother who had "never been picked up for even a traffic ticket." The two meetings admittedly occurred, but there is a sharp dispute concerning the nature of the conversations.

The sentencing record in this case shows that before his plea of guilty was accepted, he stated in answer to the court's questions that no promises or threats had been made; that he had conferred with his attorney and was satisfied with his legal services; and that he was "guilty of these charges." The court then accepted his plea of guilty and referred the matter to the Probation Officer for a pre-sentence report. Later, when the petitioner appeared for sentencing, the court reminded him of his previous plea of guilty and invited him "to make any statement you care to make in your behalf or in mitigation of punishment." The petitioner then asked his attorney to speak for him. His attorney addressed the court concerning the petitioner's family background and the circumstances surrounding his involvement in the offenses charged. Counsel stated that he also represented the co-defendant who was to be tried on a plea of not guilty and requested that the petitioner be allowed to remain in the County Jail as a defense witness. The court then stated its understanding that "this defendant [Grisham] claims that Garcie [co-defendant] is innocent of all charges." The attorney answered "Yes, sir. That's why I want to use him." When the petitioner was asked if he had anything to add to what his attorney had said, he recited the details leading up to his arrest, stating that he had come to Oklahoma to buy cattle and had been contacted "about buying this marijuana * * * which I did"; and that his contact had told him that "there is five thousand dollars you can make on this. Anyway I want to tell the truth about the thing." Finally, he said, "I think your honor has the rest of it up there, so I don't have any further things to say." The court was not impressed with the reasons given for the admitted offenses and proceeded to impose sentence.

From this record it is undeniably plain that the sentencing court conducted the proceeding with commendable care and solicitude for the petitioner's rights. The petitioner freely, voluntarily and knowingly entered a plea of guilty to the charges against him. As the trial court observed, both his testimony and the testimony of his corroborating witness in support of his collateral allegation is clearly baseless and false and "not worthy of belief."

Judgment is affirmed.